IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| IN THE MATTER OF THE TRACKING OF A SILVER 2004 TOYOTA HIGHLANDER, PENNSYLVANIA LICENSE PLATE NUMBER KHE-3052, VIN JTEEP21AX40021878 | Case No. 2:24-mj-131-KFW<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Elliot Arsenault, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 3117 to authorize the installation and monitoring of a tracking device on a silver 2004 Toyota Highlander bearing Pennsylvania license plate number KHE-3052 and vehicle identification number JTEEP21AX40021878 ("the SUBJECT VEHICLE"). Based on the facts set forth in this affidavit, I believe that the SUBJECT VEHICLE is presently being used in furtherance of the distribution of controlled substances, in violation of 21 U.S.C. § 841, and that there is probable cause to believe that the installation of a tracking device on the SUBJECT VEHICLE and use of the tracking device will lead to evidence, fruits, and instrumentalities of the aforementioned crimes as well as to the identification of individuals who are engaged in the commission of those and related crimes.

2. I am a Special Agent ("SA") with Homeland Security Investigations ("HSI") and have been since March 2022. I am currently assigned to HSI's Portland, Maine office. I have participated in numerous criminal investigations, to include matters involving investigations relating to the trafficking of narcotics. Through my training and

experience, I have become familiar with the habits, methods, routines, practices, and procedures commonly employed by persons engaged in drug trafficking.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to provide the facts necessary for a determination of probable cause for the requested search warrant.

## PROBABLE CAUSE

4. I hereby adopt and incorporate by reference my affidavit filed in support of a search warrant issued March 14, 2024, and authorizing the continued placement of a geolocation tracker on the SUBJECT VEHICLE (as further defined in my affidavit, attached hereto as Exhibit A). As described in Exhibit A, the SUBJECT VEHICLE has, and is being utilized by Target Subject Kenneth ADAMS to further his drug trafficking organization. The authorization to track the SUBJECT VEHICLE runs through April 27, 2024; therefore, I am requesting that the Court issue an additional warrant to track the SUBJECT VEHICLE for a period of forty-five days in order to facilitate the continuation of HSI's investigation.

5. I know from my participation in this investigation that, since the Court authorized the latest tracker warrant on March 14, 2024, ADAMS has continued to traffic narcotics from New York into Maine using the SUBJET VEHICLE. On about March 27, 2024, ADAMS apparently discovered the GPS tracking device on the SUBJECT VEHICLE during an oil change; he removed the device and placed it on a neighbor's vehicle. After discovering this (based on the new pattern of movement reported by the GPS tracker), HSI agents located the SUBJECT VEHICLE on about

April 9, 2024, and surreptitiously installed a new GPS tracking device. Since that time, HSI has continued to monitor ADAMS's movements, which remain consistent with his known trafficking pattern.

6. For example, using the GPS tracker, in the early morning hours of March 14, 2024, I monitored the SUBJECT VEHICLE leaving Bronx, New York and traveling to 281 Common Road in Union, Maine (the "ADAMS Residence" as defined in Exhibit A). Later that morning, I monitored the SUBJECT VEHICLE traveling to the vicinity of 53 State Street in Augusta, and then returning to the ADAMS Residence. Later that evening, the SUBJECT VEHICLE traveled to the vicinity of 59 Bayside West Road in Owls Head, before returning to ADAMS Residence. As detailed in Exhibit A, ADAMS had previously visited these addresses upon returning from earlier suspected drug resupply trips.

7. On about March 14, 2024, I was informed by CS-1 that ADAMS told CS-1 that he had trafficked 3 kilograms of cocaine and 300 grams of fentanyl into Maine, and that he intended to traffic additional fentanyl as well.[1] On about March 17, 2024, law enforcement observed the SUBJECT VEHICLE in the vicinity of 116 Violet Lane in Waldoboro, Maine, the known trap house maintained by Target Subject Lisa PROCK and further described in Exhibit A. Thereafter, the SUBJECT VEHICLE was again

---

[1] It should be noted that on about April 21, 2024, CS-1 was arrested for aggravated drug trafficking in Thomaston, Maine. At the time of his arrest, CS-1 had in his possession distribution quantities of fentanyl, a Glock handgun, and a suspected machine gun conversion device, among other contraband. Charges are currently pending against CS-1 in state court for these crimes. Prior to his arrest, CS-1 had been deactivated as a confidential source by HSI, because CS-1 attended a debrief with HSI agents carrying suspected drugs on his person.

observed in the vicinity of 53 State Street. Over the next several days, the SUBJECT VEHICLE again visited the vicinities of 116 Violet Lane, 53 State Street, and 59 Bayside West Road.

8. Between April 12, 2024, and April 24, 2024, HSI monitored and/or observed the SUBJECT VEHICLE make frequent trips to the same locations, and monitored what is believed to be a drug re-supply trip to ADAMS's residence in Bronx, New York on about April 23, 2024.

9. I have learned that Target Subject Jose Felix BAUTISTA resides at 59 Bayside West, a location frequented by ADAMS as described above and in Exhibit A. BAUTISTA has a criminal history including drug trafficking crimes. Since the beginning of the year, ADAMS and BAUTISTA have been in frequent communication (approximately 187 contacts), as determined by my analysis of toll records between them. I believe that ADAMS and BAUTISTA are working together to distribute illegal drugs based upon the frequency of their communications, and the frequency with which the SUBJECT VEHICLE has been located in the vicinity of 59 Bayside West, including immediately following drug re-supply trips.

10. I have learned that Target Subject Justin Dejaun GRAHAM resides at 48 State Street, Apartment 2 in Augusta. 48 State Street is located in the immediate vicinity of 53 State Street, where the SUBJECT VEHICLE has been observed multiple times as described above and in Exhibit A. Since the beginning of the year, ADAMS has contacted GRAHAM frequently (approximately 577 contacts), as determined by my analysis of toll records between them. I believe that ADAMS and GRAHAM are working together to distribute illegal drugs based upon the frequency of their communications, and the

frequency with which the SUBJECT VEHICLE has been located in the vicinity of 48 State Street, including immediately following drug re-supply trips. ADAMS has been physically surveilled entering 48 State Street, Apartment 2 on at least one occasion. GRAHAM has a criminal history involving drug trafficking and possession charges. I have also learned from the Augusta Police Department that they are currently investigating drug trafficking activities involving GRAHAM and his associates. CS-1 has previously informed me that ADAMS traffics drugs through contacts he has in Augusta.

11. On about April 23, 2024, using the GPS tracker, I monitored the SUBJECT VEHICLE in the vicinity of 1657 Montgomery Avenue in Bronx, New York (believed to be a residence used by ADAMS). Later that day, I monitored the SUBJECT VEHICLE depart the Bronx and travel towards Maine. At about 7:20 p.m., I monitored the SUBJECT VEHICLE in the vicinity of 48 State Street. At approximately 8:54 p.m., I monitored the SUBJECT VEHICLE at the ADAMS Residence, as confirmed by footage I viewed from a pole camera installed earlier to monitor ADAMS Residence. Using the pole camera, I observed ADAMS exit the SUBJECT VEHICLE and enter the residence carrying a duffle bag.

12. At approximately 12:36 a.m. on about April 24, 224, ADAMS exited the residence and departed in the SUBJECT VEHICLE. He traveled to a residence in Thomaston, Maine, where I know CS-1 to reside. At the time when ADAMS traveled there, CS-1 was still incarcerated on drug and firearms charges as described above. Thereafter, at approximately 1:29 a.m., the GPS tracker indicated that the SUBJECT VEHICLE was located in the vicinity of 59 Bayside West. The GPS tracker further

indicated that the SUBJECT VEHICLE returned to ADAMS's residence at 281 Common Road at approximately 2:03 a.m.

13. It is believed that if the requested warrant is authorized, it will continue to facilitate HSI's ability to surveille ADAMS while he is driving the SUBJECT VEHICLE. It is anticipated that, with the aid of the tracking warrant, investigators will be able to determine, among other things, where (and from whom) ADAMS obtains his narcotics, as well as the identities and locations of his Maine customers.

14. For purposes of maintaining the tracking device, it may be necessary to enter onto private property to effect repair, replacement, and removal of the tracking device. Therefore, I am seeking authorization to be present on the curtilage and in the driveway of the ADAMS Residence for the purposes described above.

15. To ensure the safety of the executing officer(s), and to avoid premature disclosure of the investigation, consistent with the information provided above, it is requested that the court authorize installation, maintenance, and removal of the tracking device during both daytime and nighttime hours.

16. In the event the Court grants this application, there will be periodic monitoring of the tracking device during both daytime and nighttime hours for a period not to exceed 45 days following issuance of the warrant. The tracking device may produce signals from inside private garages or other such locations not open to the public or visual surveillance.

## AUTHORIZATION REQUEST

17. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 3117, that

authorizes members of HSI or their authorized representatives, including but not limited to other law enforcement agents and technicians assisting in the above-described investigation, to install a tracking device on the SUBJECT VEHICLE within the District of Maine within 10 days of the issuance of the proposed warrant, to maintain, repair, and/or replace the tracking device as necessary, and to remove the tracking device from the SUBJECT VEHICLE after the use of the tracking device has ended; to install, maintain, and remove the tracking device during both daytime and nighttime hours; to surreptitiously enter the curtilage and driveway of the ADAMS Residence to effect the installation, repair, replacement, and removal of the tracking device; and to monitor the tracking device for a period of 45 days following the issuance of the warrant, including when the tracking device is inside private garages and other locations not open to the public or visual surveillance, both within and outside the District of Maine.

18. In accordance with 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), I further request that the warrant delay notification of the execution of the warrant for 30 days after the end of the authorized period of tracking (including any extensions thereof) because there is reasonable cause to believe that providing immediate notification may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice would seriously jeopardize the ongoing investigation by prematurely revealing its existence and giving suspects an opportunity to flee from prosecution, destroy or tamper with evidence, intimidate potential witnesses, notify confederates, and change patterns of behavior.

Respectfully submitted,

*[signature]*

Elliot Arsenault
Special Agent
Homeland Security Investigations

Sworn to telephonically and signed electronically in accordance with the requirements of Rule 4.1 of the Federal Rules of Criminal Procedures

Date: Apr 26 2024

City and state: Portland, Maine

*[Judge's signature]*
Judge's signature

Karen Frink Wolf, U.S. Magistrate Judge
Printed name and title